LISA L. TONKINSON,                    1:17-cv-06162-NLH-AMD

        Plaintiff,            **OPINION**

    v.

DAVID BYRD, NEC NETWORK, LLC
doing business as
CAPTURERX, LLC, PATIENTCRAFT,
LLC, BECKY SIMEON,
CHRISTOPHER HOTCHKISS, and
HOLLY RUSSO,

        Defendants.

**APPEARANCES**

ALAN H. SCHORR
ALAN H. SCHORR & ASSOCIATES, PC
5 SPLIT ROCK DRIVE
CHERRY HILL, NJ 08003

    On behalf of Plaintiff

ELLEN ROSEN ROGOFF
BENJAMIN EVAN GORDON
STRADLEY RONON STEVENS & YOUNG LLP
LIBERTYVIEW
457 HADDONFIELD ROAD - SUITE 100
CHERRY HILL, NJ 08002

KENNETH W. TABER
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 BROADWAY
NEW YORK, NY 10036

REBECCA CARR RIZZO
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 17TH STREET NW
WASHINGTON, DC 20036

    On behalf of Defendants

**HILLMAN, District Judge**

This case concerns Plaintiff's claims against her former employer arising out of her alleged whistleblowing activity related to compliance audits for a federal prescription drug program.  Before the Court are Defendants' motions to dismiss Plaintiff's complaint, and if the complaint is not dismissed in its entirety, to transfer venue to the Western District of Texas.

For the reasons expressed below, Defendants' motion to dismiss will be granted in part and denied in part, and Defendants' motion to transfer venue will be denied.

**BACKGROUND**

According to her complaint, Plaintiff, Lisa L. Tonkinson, signed her employment contract with Defendant NEC Network, LLC d/b/a CaptureRx ("CaptureRx"), a company based in Texas, on December 3, 2015, with her first day of work beginning on January 4, 2016.  Plaintiff relates that she worked out of her home office in New Jersey as a consultant on behalf of CaptureRx for its Health Resources and Services Administration ("HRSA") 340B prescription drug program.

HRSA is a governmental program that requires prescription drug manufacturers to provide outpatient medications to eligible health care organizations at significantly reduced prices.

Plaintiff relates that she prepared reports for clients and then advised clients on how to improve or fix any deficiencies that existed with relation to the 340B drug program. Plaintiff further asserts that independent audits are required by law, and hospitals are required to show the independent audits to HRSA 340B inspectors upon request.

Plaintiff's claims arise out of her 340B consulting services for the New York City Health and Hospitals Corporation ("NYCHH"). Plaintiff contends that her NYCHH reports were very thorough and noted several deficiencies and violations of law that could and would negatively affect NYCHH. She alleges those violations were severe enough to potentially lead to fines and even disqualification of NYCHH from the 340B program if a government audit was conducted and found the same deficiencies.

Plaintiff alleges that NYCHH insisted that she modify the independent audit to remove references to many of the deficiencies in her report. She claims that she refused to modify her report because her data was correct, and she believed that changing the report would unlawfully and fraudulently hide deficiencies, that if left unattended, would break the law.

Plaintiff contends that Defendants, which in addition to CaptureRX also include PatientCraft, LLC ("PatientCraft"), Holly Russo, Becky Simeon, David Byrd, and Christopher Hotchkiss,

3

received complaints from NYCHH that Plaintiff would not remove the deficiencies from her report.  Plaintiff claims that Defendants then began to exert pressure upon her to change the report to reflect that NYCHH was complying with the law, but she refused to do so.  Plaintiff alleges that her employment was terminated on September 6, 2016 as a result of her refusal to change the report and violate the law by doing so.

After her termination, Plaintiff claims that unbeknownst to her Defendants changed her report as requested by NYCHH and affixed her name to the modified report.  Plaintiff relates that NYCHH was subsequently audited by the government, which found NYCHH to be noncompliant in the very ways Plaintiff herself had found.  Plaintiff further claims that when she secured new employment with Johns Hopkins University Hospitals, Defendant Russo provided disparaging information about her to one of their contractors, who then refused to work with Plaintiff, and she lost the contract.

Plaintiff claims that Defendants' actions violate the New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. ("CEPA") (Count One), and constitute fraudulent misrepresentation (Count Two), appropriation of name for commercial advantage (Count Three), tortious interference with employment and prospective economic advantage (Count Four), and defamation (Count Five).

4

Defendants have moved to dismiss all counts in Plaintiff's complaint, arguing that they fail to state any cognizable claims against them. Defendants have also moved to change the venue of Plaintiff's case to the Western District of Texas. Plaintiff has opposed both of Defendants' motions.

**DISCUSSION**

**A.    Subject matter jurisdiction**

Defendants removed this action from New Jersey state court to this Court pursuant to 28 U.S.C. § 1441. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Plaintiff if a citizen of New Jersey, and none of the Defendants are citizens of New Jersey. (See Docket No. 10-4.)

**B.    Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the

liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. <u>Bogosian v. Gulf Oil Corp.</u>, 562 F.2d 434, 446 (3d Cir. 1977).

However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Baldwin Cnty. Welcome Ctr. v. Brown</u>, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007) (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684 (2009) ("Our decision in <u>Twombly</u> expounded the pleading standard for 'all civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) ("<u>Iqbal</u> . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before <u>Twombly</u>.").

Following the <u>Twombly/Iqbal</u> standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under

Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  <u>Fowler</u>, 578 F.3d at 210 (citing <u>Iqbal</u>, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  <u>Id.</u>; see also <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.

This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406,

1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

## C. Analysis

### 1. Defendants' Motion to Dismiss

#### a. *Count One - NJ CEPA*

Defendants have moved to dismiss Plaintiff's CEPA claim, arguing that she has not pleaded any viable whistleblowing activity, and her claim is dismissible because she lumps all Defendants together without specifying which actions of which Defendant violated CEPA.  The Court disagrees.

The New Jersey Legislature enacted CEPA in 1986 as remedial legislation entitled to liberal construction, its public policy

purpose to protect whistleblowers from retaliation by employers.

Lippman v. Ethicon, Inc., 119 A.3d 215, 224–25 (N.J. 2015)

(citations omitted).  "After nearly two decades of

implementation, it is beyond dispute that the legislative

purpose animating CEPA is, . . . to protect and encourage

employees to report illegal or unethical workplace activities

and to discourage public and private sector employers from

engaging in such conduct."  Id. (quotations and citations

omitted).

CEPA provides in relevant part:

An employer shall not take any retaliatory action against
an employee because the employee does any of the following
[protected activities]:

a. Discloses, or threatens to disclose to a supervisor or
to a public body an activity, policy or practice of the
employer, or another employer, with whom there is a
business relationship, that the employee reasonably
believes:

    (1) is in violation of a law, or a rule or regulation
    promulgated pursuant to law, ... or, in the case of an
    employee who is a licensed or certified health care
    professional, reasonably believes constitutes improper
    quality of patient care; or

    (2) is fraudulent or criminal ...;

b. Provides information to, or testifies before, any public
body conducting an investigation, hearing or inquiry into
any violation of law, or a rule or regulation ...; or

c. Objects to, or refuses to participate in any activity,
policy or practice which the employee reasonably believes:

    (1) is in violation of a law, or a rule or regulation
    promulgated pursuant to law, ... or, if the employee

> is a licensed or certified health care professional, constitutes improper quality of patient care;
>
> (2) is fraudulent or criminal ...; or
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

Id. (quoting N.J.S.A. 34:19-3).

To establish a prima facie CEPA action, a plaintiff must demonstrate that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
> (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3 [(a), (b), or (c)];
> (3) an adverse employment action was taken against him or her; and
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

Id. at 226 (citation omitted); see also Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003) (citations omitted) (setting forth the four-part standard for a prima facie CEPA claim, and explaining that a plaintiff who brings a CEPA claim need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy, and instead, the plaintiff simply must show that he or she reasonably believes that to be the case).

Here, Plaintiff claims that she noted 304B violations in her internal audit report prepared as an employee of Defendants for one of their clients, and she objected to her employer's

request that she change her report to remove discrepancies because she reasonably believed such an action constituted fraud and would ultimately lead to violations of the law. Plaintiff claims that she was terminated as a result. These allegations readily satisfy the four elements of a viable CEPA claim. See, e.g., Lippman, 119 A.3d at 219 (finding viable a plaintiff's CEPA claim for expressing, as a member of an internal review board, his objections to the other members of the internal review board that certain of their company's products were medically unsafe and that their sale violated various federal and state laws and regulations, and he was terminated after he received push back from other members of these boards and executives whose interest and expertise aligned with the business priorities of their company).

With regard to Defendants' argument that Plaintiff's CEPA claim fails due to her "group pleading," the Court does not find the complaint deficient in a case of this type. Under CEPA, an "employer," includes a "person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." N.J.S.A. 34:19-2(a). CEPA liability may attach to the employer by way of respondeat superior for the actions of its employees, and to individuals who perform retaliatory acts with the authorization of their employers. Abbamont v. Piscataway Tp. Bd. of Educ., 650 A.2d

958, 966 (N.J. 1994); <u>Ivan v. County of Middlesex</u>, 595 F. Supp.
2d 425, 478 (D.N.J. 2009). Even though Plaintiff will
ultimately have the burden of establishing the specific actions
of each Defendant in order to impose liability on them, at this
point the Court cannot fault Plaintiff for not pleading more
specifically who made the decision to demand the modification of
the reports, who determined to terminate Plaintiff,[1] and who
modified the reports and affixed Plaintiff's name to them,
because most of that information is within Defendants'
knowledge. Thus, the Court will not dismiss Plaintiff's CEPA
claim against any Defendant based on her "group pleading." <u>See,
e.g.</u>, <u>Southward v. Elizabeth Board of Education</u>, 2017 WL 111924,
at *10 (D.N.J. 2017) (denying the defendants' motion to dismiss
the plaintiff's CEPA claim for her "group pleading" because "a
plaintiff cannot be expected to be privy to the inner workings"
of the defendants' board members and their associates).

> **b.** *Count Two – Fraudulent Misrepresentation*

Defendants have moved to dismiss Plaintiff's fraudulent

---

[1] Plaintiff claims that she believes that Russo, Simeon, Byrd,
and Hotchkiss were all directly involved in the decision to
terminate her. (Docket No. 1-1 at 14.) Plaintiff signed an
employment contract with CaptureRX, but Russo works for
PatientCraft, Simeon and Hotchkiss work for both entities, and
Byrd is the CEO of CaptureRX. (Docket No. 1-1 at 7-8.) The
determination of which, if any, corporate entity or individual
will be held liable for Plaintiff's CEPA claim may only be made
after the discovery process.

misrepresentation claim because Plaintiff alleges that
Defendants intended to mislead others, and not Plaintiff.
Defendants also argue that Plaintiff's "group pleading" is fatal
to her fraud claim.  Plaintiff argues that in order to maintain
her fraud claim, she does not need to show that she relied upon
the misrepresentation, and instead she can show that Defendants
intended for a third party to rely on that misrepresentation.

The elements of common-law fraud are "'(1) a material
misrepresentation of a presently existing or past fact; (2)
knowledge or belief by the defendant of its falsity; (3) an
intention that the other person rely on it; (4) reasonable
reliance thereon by the other person; and (5) resulting
damages.'" Allstate New Jersey Ins. Co. v. Lajara, 117 A.3d
1221, 1231 (N.J. 2015) (quoting Banco Popular N. Am. v. Gandi,
876 A.2d 253 (N.J. 2005)).

Plaintiff alleges that Defendants intentionally put her
name on the altered report with the intention that NYCHH rely
upon that report, which caused her injury because her reputation
and ability to earn a living as a health care auditor was
severely damaged.  In order to overcome the fourth element of
common law fraud, which requires that Plaintiff herself relied
upon the misrepresentation to her detriment, Plaintiff cites to
Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008).

In Bridge, the Supreme Court found that in a RICO action, a

13

RICO plaintiff alleging injury by reason of a pattern of mail fraud does not have to establish first-party reliance, but a RICO plaintiff "must establish at least third-party reliance in order to prove causation." Bridge, 553 U.S. at 661 ("[A] plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations."). Plaintiff argues that such third-party reliance is sufficient to sustain her common law fraudulent misrepresentation claim.

The Court is not persuaded. Plaintiff has not cited to any case that has applied Bridge outside of RICO in a common law fraud context. Indeed, the holding in Bridge was specific to RICO, as the Supreme Court observed, "[W]e are not at liberty to rewrite RICO to reflect [our] views of good policy. . . . RICO's text provides no basis for imposing a first-party reliance requirement." Id. at 660 (citations omitted). The Supreme Court only considered the third-party reliance element in RICO, and it did not opine on whether the same element could apply to common law fraud, which traditionally requires first-party reliance. Without any indication that the Bridge case has ever been extended to the common law fraud context, the Court does not find compelling Plaintiff's attempt to do so here.

Thus, because Plaintiff has not alleged that she relied to

14

her detriment on Defendants' placement of her name on the
altered report, Plaintiff's fraudulent misrepresentation claim
must be dismissed.

### c. *Count Three – Appropriation of Name for Commercial Advantage*

Plaintiff's contention that Defendants fraudulently put her
name on the altered report sent to NYCHH is more appropriately
asserted in support of her cause of action for appropriation of
her name for commercial advantage. Defendants object to this
claim, arguing that it lacks specificity and is frivolous.

The common law tort of commercial appropriation of a
person's name or likeness is one of four torts set forth in
Restatement (Second) of Torts § 652 (1977). Castro v. NYT
Television, 851 A.2d 88, 97 (N.J. Super. Ct. App. Div. 2004)
(citing Rumbauskas v. Cantor, 649 A.2d 853, 856-57 (N.J. 1994)).
The others are invasion of privacy by an unreasonable intrusion
upon the seclusion of another, § 652B, giving unreasonable
publicity to another's private life, § 652D, and publicity that
unreasonably places a person in a false light in the public eye,
§ 652E. Id. "These are four distinct torts with different
elements that have almost nothing in common except that each
represents an interference with the right of the plaintiff to be
let alone." Id. (quotations and citations omitted).

Specifically, the tort of commercial appropriation of a

person's name or likeness "is recognition that a person has an interest in their name or likeness 'in the nature of a property right.'" Id. at 97 (quoting Restatement (Second) of Torts, § 652C comment a). "Its most common form consists of the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product," and "the use of a person's name or likeness for trade purposes is an essential element of the tort." Id. (quotations and some citations omitted) (citing Tellado v. Time-Life Books, Inc., 643 F. Supp. 904, 909-10 (D.N.J. 1986) ("[U]nder New Jersey common law, defendant would be liable for the tort of misappropriation of likeness only if defendant's use of plaintiff's likeness was for a predominantly commercial purpose, i.e., if defendant was seeking to capitalize on defendant's likeness for purposes other than the dissemination of news or information.")).

Plaintiff alleges in her complaint that Defendants affixed her name to a report she did not author in order to use her good reputation to gain commercial advantage with, and to profit from, its contract with NYCHH. Plaintiff claims that this misappropriation was made for strictly commercial reasons, without any redeeming public interest, news or historical value, and it violated her right to be "let alone."

This claim may proceed. Plaintiff has sufficiently alleged facts that support the elements of a commercial appropriation

claim.  Even though Plaintiff alleges this claim against
Defendants collectively, at this stage in the case, just like
with her CEPA claim, the issue of which Defendants took part in
putting Plaintiff's name on the altered report sent to their
customer is not within Plaintiff's knowledge to plead.
Plaintiff is permitted to flesh out this claim through the
discovery process.

### d.  *Count Four – Tortious Interference with Employment and Prospective Advantage*

Plaintiff alleges that Defendant Russo intentionally
interfered with the new job she secured after her termination
with Defendants by speaking with her new employer, who then
terminated her contract because of what Defendant Russo said
about her.  Defendants have moved to dismiss this claim, arguing
that Plaintiff's lack of explanation as to what information
Defendant Russo provided to her new employer is fatal to her
claim, and it otherwise fails to plead any involvement by the
other Defendants.

Plaintiff responds that she is only aware that Defendant
Russo spoke to her new employer, and she does not object to
dismissing this claim against the other Defendants, unless
during discovery it is uncovered that other Defendants were
involved as well.

"The Supreme Court of New Jersey has identified the four

elements of a prima facie case for [a claim of tortious interference with prospective economic advantage]: (1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with 'malice,' (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages. <u>Varrallo v. Hammond Inc.</u>, 94 F.3d 842, 848 (3d Cir. 1996) (citing <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 563 A.2d 31, 37 (N.J. 1989)) (explaining that being an "at will" employee does not affect that employee's ability to bring such a claim)).

Plaintiff has adequately pleaded her claim of tortious interference with prospective economic advantage against Defendant Russo, and again, Plaintiff's lack of knowledge about what exactly Russo said to her new employer does not cause her claim to fail at this motion to dismiss stage. The count will be dismissed against the other Defendants, without prejudice to Plaintiff's right to seek amendment should discovery reveal information regarding those Defendants' involvement with this claim.

### e. *Count Five – Defamation/Commercial Disparagement*

Plaintiff claims that she was defamed and suffered commercial disparagement when Defendants put her name on the altered report and when Russo spoke to her new employer. This

claim will be dismissed without prejudice. A claim for
defamation is different from a claim for commercial
disparagement, yet Plaintiff pleads them together without
differentiation. See Patel v. Soriano, 848 A.2d 803, 834 (N.J.
Super. Ct. App. Div. 2004) (explaining how "[c]ertain
differences between defamation and trade libel are
significant"); id. (citations omitted) (explaining that trade
libel identifies the tort addressing aspersions cast upon one's
business operation, and is it also known as injurious falsehood,
disparagement of property, or commercial disparagement, but the
tort is broader in scope than any of those terms would indicate,
and it is similar to the tort of intentional interference with
one's economic relations, rather than a branch of the general
harm to reputation involved in libel and slander); id. at 835
(citations omitted) ("[I]f the statement charges plaintiff with
personal misconduct, or imputes to plaintiff reprehensible
personal characteristics, it is regarded as libel or slander.
If, however, the aspersion reflects only on the quality of
plaintiff's product, or on the character of plaintiff's business
as such, it is disparagement.").

　　　Thus, the Court finds that Plaintiff's count for
defamation/commercial disparagement fails to state a viable
claim as currently pled and will be dismissed. As with the
claim for tortious interference with prospective economic

19

advantage, this count will be dismissed without prejudice to Plaintiff's right to seek amendment should discovery reveal information sufficient to assert either or both of these claims. The Plaintiff should note, however, that if leave to re-plead such claims is asserted in the future, such claims should not be a simple amalgam of her other claims but pled separately as the elements are different.

### 2. Defendants' Motion to Transfer

Having determined as currently pled that Plaintiff's CEPA, appropriation of her name for commercial advantage tortious, and interference with prospective economic advantage claims may proceed, the Court must address Defendants' contention that the proper venue for this action is in the Western District of Texas.

In federal court, venue questions are governed by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406.  Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper, while § 1406 applies where the original venue is improper and provides for either transfer or dismissal of the case.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995) (explaining that although either statute could theoretically provide a basis for the transfer of a case, only § 1406 can support a dismissal).  Defendants have moved for transfer pursuant to § 1404(a).

The "analysis of whether transfer is appropriate does not necessarily require extensive investigation," Van Cauwenberghe v. Biard, 486 U.S. 517, 529 (1988), and "[t]he decision to transfer is in the court's discretion, but a transfer is not to be liberally granted." In re: Howmedica Osteonics Corp, 867 F.3d 390, 401 (3d Cir. 2017) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (quotations and citation omitted)).

The U.S. Supreme Court has provided several factors for a district court to consider when evaluating a § 1404(a) motion. Factors relating to the parties' private interests include: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 571 U.S. 49, 62 n.6 (2013) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n.6 (1981)) (internal quotation marks omitted).

Public-interest factors may include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; and (3) the interest in having the trial of a diversity case in a

forum that is at home with the law.  Id.  The Court must also
give some weight to the plaintiff's choice of forum.  Id.
(citation omitted).

The Court has considered the parties' arguments as to the
proper venue of this matter, and finds that the case should
remain here.  Plaintiff is a New Jersey citizen who originally
filed her case in New Jersey state court asserting claims for
violations of a New Jersey statute and New Jersey common law,
arising out of her employment from her home office in New
Jersey.

Even though Defendants are located in Texas, the Court is
not persuaded that the private and public factors weigh
significantly enough in Defendants' favor to warrant the
transfer of this case to the Western District of Texas.
Accordingly, the Court determines that in its discretion the
matter will proceed here.

## CONCLUSION

For the reasons expressed above, the following of
Plaintiff's claims may proceed: New Jersey's Conscientious
Employee Protection Act, N.J.S.A. 34:19-1 et seq. (Count One),
appropriation of name for commercial advantage (Count Three),
and tortious interference with employment and prospective
economic advantage (Count Four).  Plaintiff's claims for
fraudulent misrepresentation (Count Two) and

defamation/commercial disparagement (Count Five) will be dismissed without prejudice.  The venue of this case will remain in this Court.

An appropriate Order will be entered.


Date: __April 24, 2018__                    ___s/ Noel L. Hillman___
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.